IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY T. W., | ) |
|       Plaintiff, | ) |
| vs. | )   Case No. 22-CV-439-JFJ |
| MARTIN O'MALLEY,[1] Commissioner of Social Security, | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Mary T. W. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.*

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

§ 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.     Procedural History and the ALJ's Decision**

On December 20, 2017, Plaintiff, then a 48-year-old female, protectively applied for a period of disability and disability insurance benefits under Title II, and supplemental security income benefits under Title XVI. R. 10, 342-349. Plaintiff alleges that she has been unable to work since an amended onset date of February 27, 2014, due to depression, sarcoidosis, anxiety, panic attacks, herniated discs, ringing in ears and hearing loss in right ear, right ankle sprain, chronic pain in joints, torn rotator cuff surgery and limited range of motion in right shoulder, rheumatoid arthritis, fibromyalgia, high cholesterol, vertigo, anemia, and herpes simplex virus 2. R. 369, 388. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 162-170, 178-191. Plaintiff then requested a hearing before an ALJ, and ALJ Christopher Hunt scheduled a telephonic hearing for June 2, 2021. R. 77-82, 192-195. Plaintiff did not appear at the hearing, and a Request to Show Cause for Failure to Appear was mailed to Plaintiff. R. 79-80, 294-296. The ALJ found good cause and set a second telephonic hearing on October 12, 2021, at

3

which Plaintiff appeared and testified. R. 39-76, 300-304. The ALJ issued a decision on October 27, 2021, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy. R. 10-26. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found Plaintiff's date last insured was September 30, 2024. R. 13. At step one, the ALJ found Plaintiff engaged in substantial gainful activity from October 2019 through the date of the decision. *Id.* At step two, the ALJ found Plaintiff had the severe impairments of migraines, sarcoidosis affecting the lungs and joints,[2] cervical degenerative disc disease and cervical and thoracic spondylosis, status post right shoulder rotator cuff repair with residuals of pain, major depressive disorder, and generalized anxiety disorder. *Id.* The ALJ additionally found Plaintiff had the non-severe impairments of diabetes, hypertension, hearing and vision issues, tinnitus, and fibromyalgia. R. 13-14. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 14.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)" with the following limitations:

> [T]he claimant can lift twenty pounds occasionally and ten pounds frequently. She can sit, stand, or walk six hours in an eight-hour day. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolding or be exposed to unprotected heights. She can tolerate no more than a normal level of exposure to gases, fumes, noxious odors, pulmonary irritants, dusts, or poor ventilation (normal defined as the level generally found in an office or commercial setting). She cannot be exposed to extreme temperatures (between 67- and 76-degrees Fahrenheit) or extreme humidity (40%-60%). The claimant can perform work with a Reasoning level of 3 as defined by Appendix C of the Dictionary of Occupational Titles, which is apply commonsense

---

[2] Sarcoidosis is a rare inflammatory disease that causes "cells to form clusters of inflamed tissue called 'granulomas.'" Sarcoidosis typically affects the lungs and lymph nodes, but it can also affect the heart, skin, eyes, and nervous system. *Learn About Sarcoidosis*, AM. LUNG ASSOC., https://www.lung.org/lung-health-diseases/lung-disease-lookup/sarcoidosis/learn-about-sarcoidosis#:%7E:text=Key%20Facts,skin%2C%20heart%20and%20nervous%20system (last updated July 31, 2023).

4

understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. The work would need to be repetitive, routine, and rote. She can tolerate occasional contact with coworkers, supervisors, and the general public. She cannot perform work with strict production standards such as fast-paced integral team assembly line work or poultry processing.

R. 17. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. R. 24. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as Mail Clerk, Office Helper, and Laundry Folder. R. 24-25. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 25. Accordingly, the ALJ concluded Plaintiff was not disabled from the amended onset date of February 27, 2014, through the date of the decision. R. 25-26.

### III. Issues

Plaintiff's counsel, Debbra J. Gottschalk, has failed to follow the undersigned's Case Management Order (ECF No. 5), which required her to format the Opening and Reply Briefs in accordance with the Court's Administrative Procedures for Social Security Actions.[3] These procedures required Ms. Gottschalk to specifically list and number each alleged error the ALJ made and discuss each alleged error in detail in separate subsections. The majority of Plaintiff's Opening Brief is spent summarizing the ALJ's decision, reciting Plaintiff's medical history and testimony, and citing broad legal standards that provide no assistance in analyzing the appeal. Counsel is cautioned to follow the Court's rules and orders, and that nonconforming briefs may be stricken in the future.

---

[3] Ms. Gottschalk has repeatedly filed briefs that do not comply with the Court's rules and scheduling orders. *See, e.g., Byington v. Astrue*, No. 07-CV-113, 2008 WL 11471029, at *2 n.2 (N.D. Okla. Mar. 19, 2008) (collecting instances dating back to 1997 where counsel failed to follow the Court's briefing requirements).

The Court interprets Plaintiff's briefing as raising three allegations of error on appeal: (1) the ALJ failed to develop the record regarding Plaintiff's vision and left shoulder impairments; (2) the ALJ's RFC was unsupported by substantial evidence; and (3) the ALJ failed to follow testimony from the VE. ECF No. 21.

## IV. Analysis

### A. The ALJ Adequately Developed the Record

Plaintiff appears to argue the ALJ failed to develop the record regarding Plaintiff's vision issues and left shoulder pain by failing to obtain existing medical records. ECF No. 21 at 3 ("If the [ALJ] was in doubt . . . , he could have instructed counsel to obtain the records [or] held the trial record open for a period of time. . . . [H]e could have held the record open to obtain any follow up test results.").[4] Plaintiff contends the ALJ should have obtained existing treatment records from Plaintiff's ophthalmologist and results from an MRI on Plaintiff's left shoulder, both of which were referenced in the administrative record. *Id.*

Although the burden to prove disability is on the claimant, a social security disability proceeding is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). "This is true despite the presence of counsel, although the duty is heightened

---

[4] The Commissioner interprets this portion of Plaintiff's brief as both a failure to develop the record argument and a step-two argument. *See* ECF No. 25 at 8-10. To the extent Plaintiff argues the ALJ erred at step two by failing to adequately consider her vision problems as a severe impairment or her left shoulder pain as a medically determinable impairment, Plaintiff's argument is unpersuasive. Because the ALJ found Plaintiff had other severe impairments and addressed her functionally-limiting medically determinable impairments, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

when the claimant is unrepresented." *Id.* "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). The standard, instead, "is one of reasonable good judgment." *Id.* The ALJ is not required to further develop the record if the ALJ can make a disability determination based on the evidence in the administrative record. *Cowan*, 552 F.3d at 1187.

When the claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations omitted). "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to extort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

Where the plaintiff is contending the ALJ failed to "develop the record" by failing to obtain existing, material medical records, the Tenth Circuit has noted "it may be appropriate" for the plaintiff "to prove prejudice by establishing that the missing evidence would have been important in resolving the claim before finding reversible error." *Hawkins*, 113 F.3d at 1169 (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)). Although this "stricter showing" is not a requirement for reversal, *see Maes*, 522 F. 3d at 1097 n.1, Tenth Circuit courts have regularly looked to whether a plaintiff showed the relevance of the missing evidence in determining whether the ALJ's failure to obtain existing medical records was reversible error. *See Steadman v. Apfel*, 172 F.3d 879, 1999 WL 76907, at *4-5 (10th Cir. 1999) (unpublished); *Hanson v. Apfel*, 173 F.3d 863, 1999 WL 160821, at *2 (10th Cir. 1999) (unpublished); *Rose v. Colvin*, No. CV 13-1015, 2015 WL

7

13662771, at *4 (D.N.M. Apr. 30, 2015), *report and recommendation adopted*, 2015 WL 13662774 (May 20, 2015); *Pendleton v. Colvin*, No. CIV-14-348, 2015 WL 5009790, at *3 (W.D. Okla. July 24, 2015); *Vaden v. Astrue*, No. 10-1255, 2011 WL 2473247, at *4 (D. Kan. June 21, 2011); *Crawford v. Massanari*, No. 00-CV-792, 2001 WL 1943879, at *6 (N.D. Okla. Aug. 24, 2001).

The following records inform the Court's analysis regarding vision records. On January 19, 2018, Plaintiff reported to her rheumatologist, Laura Bilbruck, M.D. R. 647. Dr. Bilbruck noted that Plaintiff was seeing an ophthalmologist, Lars Freisberg, M.D. *Id.* Dr. Bilbruck's treatment notes acknowledged that Dr. Freisberg sees Plaintiff for her sarcoid eye disease and had diagnosed Plaintiff with an eye infection. R. 647, 650. In discussing Plaintiff's case with Dr. Freisberg, Dr. Bilbruck noted that Plaintiff's sarcoidosis was "active and worsening with episcleritis." R. 650. Dr. Bilbruck's notes indicate that Plaintiff was supposed to meet with Dr. Freisberg in a few months, but it is unclear whether this occurred.[5] *Id.* Dr. Freisberg's treatment notes are not included in the record.

The following records inform the Court's analysis regarding left shoulder records. On October 25, 2018, Plaintiff presented to Jesicah M. Gilmore, M.D., alleging "severe" left shoulder pain and an inability to raise her arm above her head. R. 939. On examination, Plaintiff had normal external rotation but was unable to complete internal rotation testing. R. 941. Plaintiff

---

[5] The Court located other references to Plaintiff's treatment with Dr. Freisberg and Tulsa Retina Consultants that Plaintiff did not cite in her briefs. *See* R. 394 (Plaintiff noting in her Disability Report that she sees Tulsa Retina Consultants for her eye issues); R. 764 (noting that Plaintiff, during a mental consultative examination, said a "retina specialist suggested a procedure for taking out the fluid [in her eyes] and replacing it, but [Plaintiff's] inflammation is too high to proceed with that plan"); R. 897 (Plaintiff's primary care physician noting that Plaintiff sees Dr. Freisberg, an ophthalmologist, but is unsure when Plaintiff's next appointment is). Treatment records from Tulsa Retina Consultants were received and considered by state agency medical reviewers during Plaintiff's initial and reconsideration disability determinations, but these records are not part of the administrative transcript. R. 90, 98-99, 106, 114, 128, 137-138, 147-148, 156-157. The Court has considered all record evidence in determining whether reversal is required.

further exhibited painful arc, positive drop arm, and positive empty can testing. *Id.* Dr. Gilmore administered Plaintiff a left subacromial bursa injection and referred Plaintiff for a left shoulder MRI. *Id.* On March 4, 2019, Plaintiff had a follow-up for her left shoulder pain with Carolyn Cobb, M.D. R. 911. At Plaintiff's request, Dr. Cobb reviewed Plaintiff's left shoulder MRI and subsequent radiology report with Plaintiff. R. 911-912. Dr. Cobb prescribed Plaintiff Meloxicam for pain and inflammation. R. 912. Dr. Cobb also indicated that Plaintiff was to begin physical therapy for her left shoulder as soon as Plaintiff figured out her work schedule. *Id.* It is unclear from the record whether Plaintiff performed this physical therapy. Neither the MRI results nor the radiology report are included in the record.

  The Court finds no reversible error in the ALJ's failure to obtain Dr. Freisberg's treatment records or the results of Plaintiff's left shoulder MRI. At Plaintiff's administrative hearing, the ALJ asked Plaintiff's counsel if she had any additions or objections to the record. R. 42. Plaintiff's counsel responded, "I have no objections to them" but "the records that I would add would be more recent ones[.]" *Id.* Plaintiff's counsel and the ALJ then immediately began discussing the time frame for Plaintiff's period of disability. R. 42-43. Plaintiff's counsel never specified what records she was referring to and did not make any request at the hearing to submit additional information in the administrative record. Even after Plaintiff testified about her vision issues (R. 45, 48-49, 52-53), Plaintiff's counsel never indicated the administrative record needed to be supplemented with additional medical evidence regarding this impairment.

  Plaintiff has failed to indicate the relevance of the missing records or otherwise explain how these records would have affected the ALJ's decision to deny her claim. *See Hawkins*, 113 F.3d at 1169. It is unclear whether Plaintiff has even reviewed the records she says the ALJ should have reviewed, which suggests to the Court that the records do not contain probative information. *See Hanson*, 1999 WL 160821, at *2 (noting plaintiff's apparent failure to obtain the evidence the ALJ allegedly should have considered "casts considerable doubt on the relevance of the evidence

9

and existence of any prejudice [plaintiff] may have suffered from the ALJ[] not obtaining it"); *see also Maes*, 522 F. 3d at 1097 (noting neither plaintiff nor her counsel had obtained the missing records, which suggested that "counsel ha[d] abandoned his role as advocate in favor of relegating that responsibility to the ALJ").

Here, Plaintiff was represented by counsel and argues the ALJ failed to obtain existing medical records *only after* the ALJ issued a decision denying benefits. In her briefing on appeal, Plaintiff does not explain the relevance of the missing records or how the records would have impacted the ALJ's decision. Under these facts, the Court finds no reversible error based on the ALJ's failure to obtain existing medical records. *See Steadman*, 1999 WL 76907, at *4-5 (concluding ALJ did not commit reversible error in part because plaintiff never indicated how the missing records would have affected the ALJ's decision); *Pendleton*, 2015 WL 5009790, at *3 (affirming ALJ's decision denying benefits in part because plaintiff never "offered any explanation as to how th[e] missing record would be relevant to the disability determination"); *Vaden*, 2011 WL 2473247, at *4 (finding that, although ALJ should have reviewed the missing records, the error was harmless because plaintiff did not demonstrate how the records "would have been important in determining plaintiff's RFC or resolving the claim of disability"); *Crawford*, 2001 WL 1943879, at *6 (concluding ALJ did not commit reversible error where plaintiff did not show how "the ALJ's review of the missing . . . records would have affected his decision to deny benefits"). *Cf. Rose*, 2015 WL 13662771, at *4 (recommending reversal where plaintiff attached the missing records to his briefing and explained relevance of records).

**B.      The ALJ's RFC is Supported by Substantial Evidence**

Plaintiff argues that the RFC is not supported by substantial evidence and that she lacked the RFC "to maintain regular employment." ECF No. 21 at 7-8. A claimant's RFC is her "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her medical impairments and symptoms. Social Security

Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  In assessing the RFC, the ALJ must "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations.  *Id.* at *7.  In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id*.  The ALJ must also "explain how any material inconsistencies or ambiguities in the [record] evidence . . . were considered and resolved."  *Id.*

### 1. Vision/Left Shoulder Impairments

Plaintiff's principal RFC argument repackages her "failure to develop the record" argument.  Plaintiff contends the ALJ's RFC is not supported by substantial evidence because the ALJ failed to account for all of plaintiff's physical limitations by not obtaining Dr. Freisberg's treatment records or Plaintiff's left shoulder MRI results. ECF No. 28 at 4-10.  As explained above, the undersigned finds no reversible error in the ALJ's development of the record.  The Court further finds substantial evidence supports the ALJ's RFC determination, as it is supported by more than a scintilla of evidence.

The ALJ thoroughly summarized the available medical evidence and made a disability determination based on this evidence.  Regarding Plaintiff's alleged vision impairment, the ALJ noted that "there [were] no treatment records from an eye care provider in the [administrative record]."  R. 14.  However, the ALJ did note Dr. Bilbruck's treatment records reflected Plaintiff was seeing Dr. Freisberg for "active sarcoidosis with worsening episcleritis" (*Id.* (citing R. 647-650)), and that Plaintiff's pulmonologist indicated that her sarcoidosis was "primarily causing eye problems and fatigue" (R. 19, 21 (citing 600-606)).  The ALJ further discussed a psychological consultative examination where the examiner noted Plaintiff had no apparent visual difficulties, a physical consultative examination that showed Plaintiff had 20/25 vision in both eyes with

11

correction, and a fundoscopic examination that was benign.[6] R. 14 (citing R. 767-768, 774, 862). The ALJ further explained that, although Plaintiff was assessed with eye-related diseases such as retinopathy and panuveitis, Plaintiff's primary care physician records showed she did not regularly allege vision problems and that her superficial eye examinations were normal. *Id.* (citing 876-878, 886-888, 891-892, 894, 896, 899-900, 904, 910, 945, 957, 970, 975-977). Additionally, the ALJ also found "partially persuasive" the prior administrative medical findings of the state agency physicians. R. 23. The state agency physicians reviewed treatment records from Tulsa Retina Consultants and found Plaintiff did not have any visual limitations. R. 98, 113, 136-137, 155-156.

Regarding Plaintiff's left shoulder pain, although the record did not include the MRI report, the ALJ adequately reviewed the evidence surrounding Plaintiff's left shoulder pain in formulating the RFC. The ALJ recorded Plaintiff's hearing testimony that she has pain in her left shoulder. R. 18 (citing R. 54). The ALJ noted that Plaintiff went to the hospital in October 2018 and May 2019 for left shoulder pain. R. 20-21 (citing R. 911-912, 939-941). The ALJ noted that Plaintiff's left shoulder examination was abnormal and that Plaintiff could not raise her arm over her head. R. 20 (citing R. 939-941). The ALJ further noted Plaintiff was treated with a steroid shot and a prescription for Meloxicam. R. 20-21 (citing R. 911-912, 939-941).

The ALJ considered the record evidence related to Plaintiff's various impairments and adequately explained how such evidence supported the RFC. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence.") Although Plaintiff broadly contends the ALJ failed to properly evaluate her various impairments, because Plaintiff points to no record evidence the ALJ failed to consider, Plaintiff's arguments simply amount to a request that the Court reweigh the

---

[6] A fundoscopic examination, also called an ophthalmoscopy, "is an examination of the back part of the eye (fundus), which includes the retina, optic disc, choroid, and blood vessels." *Ophthalmoscopy*, Univ. Cal. S.F. Health, https://www.ucsfhealth.org/medical-tests/ophthalmoscopy (last visited Jan. 9, 2024).

evidence in her favor, which the Court cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("[The court] review[s] only the sufficiency of the evidence, not its weight. . . . Although the evidence may have also supported contrary findings, [the court] may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up).

### 2.     Daily Activities

Plaintiff also contends the ALJ improperly considered her daily activities in formulating the RFC.  ECF No. 21 at 8.  Plaintiff appears to argue the ALJ gave undue weight to Plaintiff's testimony that she could put her daughter's hair into a ponytail and carry groceries from her car to her front door in formulating the RFC.  *Id.* (citing R.18).

The social security rulings, the regulations, and Tenth Circuit law make clear a plaintiff's daily activities must be considered in evaluating a claimant's alleged disability.  *See* SSR, 96-8p, 1996 WL 374184, at *5 (explaining the "RFC assessment must be based on all the relevant evidence in the case record," including Plaintiff's "[r]eports of daily activities"); 20 C.F.R. §§ 404.1529, 416.929 (explaining the ALJ considers multiple factors when evaluating a plaintiff's symptoms, including the plaintiff's daily activities); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna* and explaining the ALJ considers a plaintiff's daily activities when considering plaintiff's alleged disabling pain).[7]

The Court finds no error in the ALJ's discussion of Plaintiff's daily activities.  The ALJ began his RFC analysis by summarizing Plaintiff's hearing testimony and daily activities.  R.17-18.  The ALJ considered Plaintiff's testimony that she gets her daughter ready for school in the morning; can put her daughter's hair into a ponytail; can carry twenty-five pounds of groceries

---

[7] Plaintiff cites an Eighth Circuit case, *Haggard v. Apfel*, 175 F.3d 591 (8th Cir. 1999), for the proposition that her ability to perform daily tasks does not mean she is capable of regular work. ECF No. 21 at 8.  Plaintiff's reliance on *Haggard* is misplaced.  In *Haggard*, the Eighth Circuit found no error where the ALJ considered the plaintiff's daily activities and found plaintiff's subjective allegations of pain not credible.  175 F.3d at 594-95.  It is unclear how *Haggard* support's Plaintiff's position.

13

from her car to her front door; eats out most nights because she does not feel well enough to cook; can only make simple meals when she is able to cook; does minimal housework; and returned to work so she could support herself and her daughter, despite being in constant pain. R. 18. However, the ALJ's RFC analysis did not end there. The ALJ then thoroughly evaluated the objective medical evidence and the opinion evidence of record. R. 19-24. Plaintiff has failed to cite any applicable law or otherwise explain how the ALJ's notation that Plaintiff testified that she can put her daughter's hair in a ponytail and carry twenty-five pounds of groceries from the trunk of her car to her front door equates to placing undue weight on Plaintiff's daily activities. Because Plaintiff's daily activities were just one of many factors the ALJ considered in formulating the RFC, the Court finds no error.

### C. The ALJ Did Not Err in Analyzing VE Testimony

Plaintiff argues the ALJ erred by failing to either follow or discredit the VE's testimony in response to hypothetical questions that included limitations greater than those adopted into the RFC. ECF No. 21 at 8-9. In particular, the ALJ queried the VE about a hypothetical person who would have to miss work approximately two days a month, and the VE responded that no competitive work would be available for such a person. R. 75.

During the hearing, the ALJ asked two hypotheticals. R. 74-75. The ALJ first asked the VE to consider a hypothetical claimant with the same age, education, past work, and RFC of Plaintiff. *Id.* The VE testified the hypothetical person with these limitations could perform the jobs of Mail Clerk, Office Helper, and Laundry Folder. R. 75. The ALJ relied on this hypothetical and the VE's testimony in his decision, using the jobs discussed by the VE. R. 24-25. The ALJ then asked the VE to consider a hypothetical claimant that would have to miss work approximately twice a month. R. 75. The VE responded that this person would not be able to maintain competitive employment. *Id.*

14

Plaintiff's argument is without merit. There is no requirement that the ALJ exhaustively analyze the VE's testimony regarding limitations the ALJ ultimately does not accept into the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1998) ("[A]n ALJ is not required to discuss every piece of evidence."). To the contrary, a VE's testimony may provide substantial evidence to support an ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical question "reflect[s] with precision all of [claimant's] impairments" and "limitations that are borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, "[a]n ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010). "By posing a particular hypothetical, an ALJ does not confine [him]self to making an RFC determination mirroring the hypothetical limitations." *Id.* If this were the case, then the ALJ would be "precluded from posing more than one hypothetical." *See id.* at 931 n.2. Accordingly, the Court finds no error in the ALJ's analysis of VE testimony.

**V.    Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 19th day of January, 2024.

*(signature)*
JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT